UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRIE I., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 22-CV-148-CDL |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
|     **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision denying benefits and **remands** the case for further proceedings.

**I.      Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II. Background and Procedural History

The plaintiff filed a Title II application and protectively filed a Title XVI application for disability benefits on February 25, 2020, alleging a disability onset date of February 25, 2020. (R. 26, 92). The plaintiff alleged disability due to a combination of impairments, which are identified in her application as "car accident, brain injury, microevolve, memory issues, high blood pressure, irritable bowel syndrome, GERD, eczema, ulcer disease, lung problems, goiter, diverticulitis, heart issues, asthma, anxiety, allergies, [and] depression."

(R. 92-93).[1] She was 55 years old on the alleged onset date. *Id*. The plaintiff completed high school and vocational training. (R. 51). She lives with her disabled son, and she is paid through a state program to take care of him, earning about $850 per month. (R. 49-50). She has past relevant work as a home care provider and manager in a housing facility for the disabled. (R. 53-54).

The plaintiff's application was denied on initial review and on reconsideration. An Administrative Law Judge (ALJ) held a hearing via telephone on September 29, 2021. (R. 43-87). The plaintiff and a vocational expert (VE) provided testimony. *See id*. The ALJ denied benefits in a decision dated October 12, 2021. (R. 28-42). The Appeals Council issued a decision on January 27, 2022 denying the plaintiff's request for review of the ALJ's decision. (R. 1-6). Following the Appeals Council's denial, the plaintiff timely filed a Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's October 12, 2021 decision under 42 U.S.C. § 405(g).

### III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v.*

---

[1] The administrative record repeatedly identifies one of the plaintiff's alleged conditions as "microevolve." (*See, e.g.*, R. 123, 145, 151, 153, 158). Neither party's briefing discussed or questioned this alleged impairment. (*See* R. 299). As such, although this term is unclear, it does not appear to be relevant to the issues raised on appeal of the ALJ's decision.

*Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084.

At step one, the claimant must demonstrate that she is not engaged in any substantial gainful activity. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined the plaintiff's work caring for her son met the level of substantial gainful activity in the third quarter of 2020. (R. 28). However, the ALJ found there has been a continuous 12-month period in which she did not engage in substantial gainful activity; accordingly, the ALJ proceeded to step two. (R. 29).

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined that the plaintiff has severe impairments of urinary tract disorder, migraines, anxiety, obsessive-compulsive disorder (OCD), and spine disorder. (R. 29). The ALJ found the plaintiff's obesity does not significantly limit the plaintiff's work-related functioning and is therefore nonsevere. *Id*.

At step three, the ALJ determines whether the claimant's severe impairment or impairments is equivalent to one that is listed in Appendix 1 of the regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404, subpt. P, app'x 1 (Listings). Here, the ALJ found that the plaintiff's physical and mental impairments do not meet or equal the criteria for any Listing, specifically noting Listings under Sections 1.00 (musculoskeletal system) and 12.00 (mental disorders). The ALJ also discussed the "paragraph B" criteria—four areas

4

of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. *See* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ found that the plaintiff has a moderate limitation in understanding, remembering, and applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 29-30). Because the plaintiff does not have at least one extreme or two or more marked limitations, the ALJ found the paragraph B criteria are not satisfied. (R. 30).

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing work she has performed in the past. The ALJ first determines the claimant's residual functional capacity (RFC) based on all the relevant medical and other evidence. 20 C.F.R. § 404.1520(e); *see also Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ next determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023. Finally, the ALJ determines whether the RFC from phase one allows the claimant to meet the job demands found in phase two. *Id.*

Here, the ALJ determined that the plaintiff has the RFC to perform

> medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except occasionally climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; frequently balancing; occasionally stooping, kneeling, crouching, or crawling; must avoid frequent exposure to loud noises, dust, odors, fumes, and pulmonary irritants and unprotected heights and dangerous moving machinery; able to understand, remember, and carry out simple tasks with routine supervision; able to pace and persist for an eight-hour workday and 40-hour work week; able to interact appropriately with supervisors,

5

> coworkers, and the general public on a superficial work basis; can respond appropriately to changes in a routine work setting which are gradually introduced.

(R. 30-31). The ALJ found that the plaintiff is unable to perform her past relevant work as a resident care aide, teacher aide, and home attendant. (R. 34-35). However, citing the VE's testimony, the ALJ found that the plaintiff could perform alternative jobs existing in significant numbers in the national economy, including (1) **laundry worker**, Dictionary of Occupational Titles (DOT) # 361.687-018, medium exertion, unskilled work, specific vocational preparation (SVP) Level 2, with approximately 68,000 such jobs available in the national economy; (2) **hand packager**, DOT # 920.587-018, medium exertion, unskilled work, SVP Level 2, with approximately 32,000 such jobs available in the national economy; and (3) **sandwich maker**, DOT # 317.664-010, medium exertion, unskilled work, SVP Level 2, with approximately 28,000 such jobs available in the national economy. (R. 35-36). As such, the ALJ found the plaintiff not disabled at step five. (R. 36).

## IV. Discussion

### A. Issues

The plaintiff argues that the ALJ failed to properly consider various portions of the record relating primarily to (1) the plaintiff's ability to lift, carry, reach, and use her hands as specified in the RFC determination, and (2) the effects of her migraine headaches and dizziness on her ability to perform work-related activities. The plaintiff also argues that the ALJ erred at step three in failing to consider whether her headache symptoms meet or equal a Listing. The Commissioner contends that the ALJ properly evaluated the record evidence and substantial evidence supports the ALJ's decision.

The plaintiff's brief focuses primarily on the ALJ's alleged non-compliance with the Commissioner's regulations governing evaluation of medical opinion evidence. (*See* Doc. 14 at 3-11 (citing, *inter alia*, 20 C.F.R. § 416.920c(c)). The plaintiff argues that the ALJ failed to properly evaluate the medical opinions and other medical evidence in the record concerning her exertional capacity, her alleged limitations in using her upper extremities, and her neurocognitive disorder. The plaintiff specifically argues that the ALJ failed to properly evaluate the findings of medical sources including Kenneth Trinidad, D.O., River Smith, Ph.D., and state agency reviewing physicians and psychologists.

However, the Court finds that the plaintiff has not established any reversible error with respect to these opinions under 20 C.F.R. §§ 404.1520c or 416.920c. The ALJ's decision addressed each of the medical source opinions in the record. (*See* R. 33-34). Consistent with the regulations, the decision articulated how persuasive (or unpersuasive) the ALJ found each source's opinion, with discernible reasoning as to how the ALJ weighed the supportability and consistency factors. 20 C.F.R. § 404.1520c(b); *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection.").

Additionally, the plaintiff's brief argues that the ALJ failed to properly assess the consistency of her subjective statements with various medical source evidence and prior

7

administrative findings. Puzzlingly, the plaintiff argues that the ALJ failed to address how her subjective complaints "corroborated" Dr. Trinidad's findings—rather than whether the ALJ properly assessed the plaintiff's hearing testimony and other subjective statements regarding her symptoms and limitations. (*See* Doc. 14 at 14-15). The Commissioner argues that the plaintiff has therefore waived any argument that the ALJ failed to properly assess the consistency of her statements under 20 C.F.R. §§ 404.1529(c) and 416.929(c).

The Court notes that the plaintiff's brief is less than ideally clear in setting forth the applicable standards the ALJ was bound to follow. However, the Court may not "abdicate its traditional judicial function, nor escape its duty to scrutinize the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct legal standards to the evidence." *Womack v. Astrue*, No. CIV-07-167-W, 2008 WL 2486524 (W.D. Okla. June 19, 2008) (citing *Bridges v. Gardner,* 368 F.2d 86, 90 (5th Cir. 1966), *inter alia*). Moreover, the Court finds that the Commissioner had adequate notice and opportunity to brief this issue in light of the plaintiff's brief, and in fact did so in its response brief. (*See* Doc. 15 at 9-11). Accordingly, the analysis *infra* addresses the ALJ's decision insofar as it relates to the ALJ's evaluation of the plaintiff's testimony and other subjective statements in the record.

### B.  Subjective Statements

In assessing a claimant's complaints of pain and other symptoms, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether

considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary*, 695 F.3d at 1166-67 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[2] In evaluating pain, the Commissioner considers factors including:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of . . . pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c), 416.929(c); *see also Keyes-Zachary,* 695 F.3d at 1167; *Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (quoting *Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991)) (describing several similar factors which should be analyzed).

The plaintiff testified that she has impairments including urinary tract disorder, migraines, anxiety, OCD, and spine disorders. (R. 31). The ALJ acknowledged the plaintiff's testimony that, due her impairments, she has limitations in lifting, squatting, bending, standing, reaching, kneeling, talking, stair climbing, seeing, remembering,

---

[2] While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna* and *Keyes-Zachary*. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value.").

9

completing tasks, concentrating, understanding, and following instructions. *Id*. She takes ibuprofen for her pain. (R. 58). She uses an inhaler twice a day for asthma. (R. 58-59). She has been hospitalized for breathing problems but has not visited the ER for breathing difficulties. (R. 59-60). Certain fumes and odors can trigger her breathing problems. (R. 59-60).

The plaintiff testified that she can walk 10 to 15 minutes before becoming tired and needing to rest. She stated that she can lift or carry less than five pounds. (R. 65). She testified that she has worsening vision problems, and that she has been told the issue is neurologic in origin. (R. 60, 65). She also experiences dizziness sometimes, and she has had "numerous falls." (R. 60, 65-66). The plaintiff testified that at times, she loses her balance, and noted that she has "trouble with depth perception." (R. 70). A few weeks before the ALJ hearing, she had a "significant" fall, resulting in a head injury. (R. 71).

Consistency determinations "are peculiarly the province of the finder of fact." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *see also White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) (ALJ's evaluation of symptom allegations "warrant particular deference"). However, the ALJ must explain "the link between the evidence and" consistency determination. *Kepler*, 68 F.3d at 391; *see also* 20 C.F.R. § 404.1529 (ALJ must provide "specific reasons . . . supported by the evidence in the case record"). Although an ALJ is not required to discuss every piece of evidence, he must consider the entire record and "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

10

Here, the ALJ's decision recited rote language in concluding that the plaintiff's subjective complaints of functional limitations "are not entirely consistent with the medical evidence and other evidence in the record." (R. 31). In explaining this finding, the ALJ noted that, despite her alleged limitations, the plaintiff testified that she

> helps care for her son who has autism. She was able to help care for her pets. She can handle her personal care. She needs reminders to take her medications. She was able to prepare meals. She could do housework. She was able to drive. She could shop in stores. She could pay bills and manage funds. She was able to spend time with others.

*Id*. The ALJ also summarized portions of the plaintiff's medical records, medical opinions, and prior administrative findings.

However, the ALJ's decision provides no traceable explanation for why the ALJ found the plaintiff could perform, *inter alia*, the standing, walking, lifting, and carrying required to perform medium-exertion work. As set forth in the Commissioner's guidelines,

> Most medium jobs, like most light jobs, require the worker to stand or walk most of the time. Also, as in light work, most unskilled medium jobs require gross use of the hands to grasp, hold, and turn objects rather than use of the fingers for fine movements of small objects. Medium work is distinct from the less strenuous levels in the activities needed to accomplish the considerable lifting and carrying involved for the full range of medium work. A maximum of 50 pounds may be lifted at a time, with frequent lifting or carrying of objects weighing up to 25 pounds.

(SSR 83-14). The ALJ's decision cites little, if any, evidence showing that the plaintiff could perform work at this exertional range. The plaintiff's self-reported daily activities, as cited in the decision, hardly establish that she could lift or carry 50-pound objects,

11

frequently lift or carry 25-pound objects, or sustain the more "strenuous" standing and walking requirements of medium work, in light of the medical evidence. *Id*.

For example, an MRI of the cervical spine on March 4, 2021, revealed C6-7 disc osteophyte complex, greater on the right side, resulting in moderate bilateral foraminal stenosis. (R. 33 (citing Ex. 22F)). The scan also showed mild central canal narrowing and mild multilevel degenerative findings, without high-grade central or foraminal stenosis. *Id*. While the ALJ's decision referenced these findings, it provided no elucidation as to how the ALJ weighed this evidence in formulating the plaintiff's RFC. Although the ALJ's decision acknowledged this evidence, the decision never explained how the ALJ weighed the MRI findings in light of the plaintiff's alleged limitations in standing, walking, postural activities, lifting, and other tasks using the upper extremities.

On November 14, 2018, Dr. Trinidad examined the plaintiff in connection with a worker's compensation claim. Dr. Trinidad noted that the plaintiff was injured in an "almost head-on" vehicle collision in 2011, while in the course of her employment as a program manager for a home care provider. (R. 401). Dr. Trinidad reported that the plaintiff had "constant pain and spasm in her neck and upper back, worsened with stooping and lifting." (R. 402). The plaintiff described pain, weakness, and paresthesias in both arms, as well as lower back pain exacerbated by bending, stooping, and lifting. *Id*. The plaintiff also described memory problems and other mental limitations; daily vertigo; dizziness triggered by bright lights; and moderate to severe headaches. (R. 401-402).

Dr. Trinidad reported that the plaintiff

>sustained injuries and work-related trauma . . . when she was transporting a patient and was involved in a head-on collision. She injured her neck and back and also has been diagnosed with a traumatic brain injury with postconcussive syndrome, posttraumatic headaches and posttraumatic vertigo. She has been seen by numerous physicians. At this time, it appears that she has achieved maximal medical recovery[.] She will require ongoing follow-up with Dr. Coggins, her primary care physician, and Dr. Cauthon, a neurologist.

(R. 404). Dr. Trinidad stated that he considered the plaintiff under the American Medical Association Guides to the Evaluation of Permanent Impairment, concluding that her impairments resulted in "permanent anatomic abnormalities." (R. 406). Dr. Trinidad set forth the findings of his physical examination that he based this conclusion on, including range of motion limitations in the cervical and lumbar spine, C6-7 disc derangement, loss of strength in both arms, and "[a]dditive impairment to the upper extremities from radiculopathy," paraspinous muscle spasms in the thoracic and lumbar spine, and traumatic brain injury with postconcussive symptoms. (R. 404-405). Dr. Trinidad noted that, "[b]eyond this point, it appears that her condition is stable and maximum recovery has been achieved." (R. 405).

Dr. Trinidad concluded that, as a result of her impairments, the plaintiff "had [9] percent impairment due to range of motion abnormalities of the cervical spine [and] . . . 12 percent impairment due to range of motion abnormalities of the lumbar spine." (R. 33). As such, Dr. Trinidad opined that the plaintiff "should be considered for vocational retraining to place her in a sedentary light duty[sic] job." (R. 406). Dr. Trinidad continued that, if the plaintiff "is not a candidate for retraining, then she would be considered 100 percent permanently and totally disabled on an economic basis . . . ." *Id.*

The ALJ noted certain objective findings in Dr. Trinidad's examination, including tenderness and muscle spasm bilaterally from C4-C7, T1-T4, and L5-S1, and decreased range of motion in the cervical spine. (R. 33). However, the ALJ concluded that he was "not persuaded by" Dr. Trinidad's opinion, finding that more recent medical records showed "mild tenderness, normal strength, tone, gait and range of motion." (R. 33). The ALJ also noted that "[t]he worker's compensation evaluation is not binding on" the Commissioner. (R. 33).

However, the ALJ was still required to perform a meaningful analysis of Dr. Trinidad's findings, as with any other significantly probative evidence, within the context of the record as a whole. Although the ALJ's decision did limit the plaintiff's RFC to "occasional" climbing, stooping, kneeling, crouching, or crawling, and only "frequent" balancing, nothing in the ALJ's discussion of the medical record contradicts the plaintiff's testimony that she has greater limitations in walking, lifting, carrying, and various postural activities. Further, the RFC determination did not restrict the plaintiff from performing "the considerable lifting and carrying" of objects up to 50 pounds, despite the plaintiff's testimony that she can only lift or carry up to five pounds. (SSR 83-14). Nor does the RFC determination appear to address the plaintiff's reported balance problems or the visual limitations she testified to and reported to various medical providers.

In formulating the plaintiff's RFC, the ALJ appears to have relied most heavily on the prior administrative findings of Herbert Meites, M.D., dated July 17, 2020, and the reconsideration findings of William McAfee, M.D., dated October 31, 2020. (*See* R. 34). Drs. Meites and McAfee each opined that the plaintiff could perform medium-exertion

work. However, notably, both of the reviewing physicians lacked the benefit of the plaintiff's 2021 cervical spine MRI. The only evidence discussed in the ALJ's decision dated after the March 2021 MRI is a July 2, 2021 visit with her primary care provider, Curtis Coggins, M.D., when the plaintiff reported that she had recently fallen after feeling a "pop" in her back when she got up from a chair. (*See* R. 893). Moreover, the reviewing consultants' findings did not address the plaintiff's subsequent testimony regarding pain and problems with balancing, falling, lifting, and other functions, and the limiting effects of her headaches.

> SSR 16-3p states that in evaluating a claimant's symptoms:
>
>> it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent."

2017 WL 5180304 at *10. The SSR further states:

> The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

*Id.* Here, instead of giving "specific reasons" for rejecting the plaintiff's statements, the ALJ's decision ignored testimony by the plaintiff about the limiting effects of her headaches and what triggers headaches. At the ALJ hearing, the plaintiff testified as follows:

> Q: What triggers . . . a headache? What kind of triggers do you have?

> A: Oh goodness gracious, lights, lights does, I've had them so long and so many of them, stress, lights . . . . I think there's so many different triggers.

(R. 73). Oddly, the ALJ's decision did not acknowledge the plaintiff's testimony or other statements in the record about her alleged sensitivity to light. (*See, e.g.*, R. 403 (November 14, 2018 report of Dr. Trinidad noting that the plaintiff "state[d] that bright lights cause her to be dizzy"); R. 801 (January 12, 2021 note that plaintiff "reports headaches mild to severe every day with light/noise sensitivity, throbbing")). The decision indicated that the ALJ adopted "further limits" in the RFC determination in light of the plaintiff's "complaints of pain and headaches." (R. 34). However, it is not clear why the ALJ adopted certain limitations but not others.

As such, the ALJ's decision did not adequately explain why he discounted the plaintiff's complaints regarding limitations and pain from her physical impairments. Remand is therefore necessary for further consideration of the record as to the plaintiff's physical RFC and, as appropriate, an explanation sufficient to enable meaningful review of the ALJ's reasoning in light of the record as a whole.

Finally, the plaintiff contends the ALJ improperly failed to address whether her headaches meet or medically equal Listing 11.02 (epilepsy), in accordance with the Commissioner's guidelines in SSR 19-4p regarding claimants with a primary headache disorder. The Commissioner contends that the evidence in the record does not support a finding that the plaintiff meets Listing 11.02, and cites agency guidance that "the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p,

2017 WL 3928306, at *4. However, the Commissioner does not dispute that the ALJ's decision failed to identify, mention, or otherwise address Listing 11.02. As such, the Court cannot determine whether the ALJ found the plaintiff's migraines do not meet or equal Listing 11.02, or whether the ALJ failed to consider that Listing. On remand, to the extent needed, the ALJ shall provide a sufficient articulation to enable judicial review of the ALJ's consideration of Listing 11.02 at step three.

### V.     Conclusion

For the reasons set forth above, the Court finds the ALJ's conclusion is legally erroneous and is not supported by substantial evidence. Therefore, the decision of the Commissioner finding Plaintiff not disabled for the relevant period is **reversed** and **remanded** for further proceedings consistent with this opinion.

ORDERED this 16th day of August, 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge